[Civ. No. 5781.   Second Appellate District, Division One.—December 23, 1927.]

H. O. CLARKE et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and RUTH M. ROSS, Respondents.

W. C. Flynn and Frank J. Creede for Petitioners.

G. C. Faulkner for Respondents.

HOUSER, J.—Briefly, the facts appear to be that an employee of petitioners was killed by a slide of earth on a cut on a hillside at a point where the employee was engaged in shoveling soil from a trench preparatory to the construction of a retaining wall.

At the hearing of the application by the widow of the employee for compensation arising from his death, among other things, the respondent Commission found: "Said injury was caused by reason of the serious and wilful misconduct of the employers and/or their managing representative. The applicant is entitled to have the amount of compensation otherwise recoverable for said injury, increased one-half."

Petitioners contend, first, that there was no evidence to support such finding, and consequently that the respondent Commission acted in excess of its powers.

The following facts were in evidence: That petitioners herein were general contractors, who at the time of the accident were engaged in the preliminary work incident to the construction of a ten-foot reinforced concrete wall which was proposed to be built as a retaining wall against or adjacent to a cut which had been made on the side of a hill. In the preparation for the construction of the wall it became necessary to dig a ditch of about two feet in depth and of equal width, in addition to the cut on the hillside, which had been made before the contractors for the construction of the wall itself had become connected with the work. That the wall might have a more secure foundation, and in order to allow for a footing of the retaining wall, the cut had been undercut "about one foot." As was stated by one witness, "it varied from a foot to eighteen inches on a horizontal plane." Although practically the upper one-fourth of the

soil in the side of the hill to be retained was composed of adobe loam, the lower three-fourths portion thereof was composed of "aluminum of silicate which was bredpated" and which had a tendency to admit a great deal of water. It was also shown that the hill "was saturated with spring water and surface water, which was evident in the soil in the face of the bank cut and in the seepage to the surface in numerous places. *The bank was not held by shoring or bracing.* The bottom of the trench contained running spring water." Under such conditions a cave-in or slide of earth of the hillside occurred at the point where the cut was made, which resulted in the death of the employee. As hereinbefore indicated, at the time of the accident the employee was engaged in shoveling loose soil from the bottom of the trench. One witness testified that a short time prior thereto several "slight slides" occurred within from thirty to forty feet of the place where the employee was killed. It was also shown that each of the contractors, as well as their foreman on the job, was experienced in the work of building retaining walls and knew, or at least should have known, the dangers incident thereto. In part, the foreman testified that in the location in which the accident occurred a cave-in was not anticipated because "the peculiarity in our line,—dirt don't slump down, it sort of chips off." A construction engineer in the employ of the safety department of the respondent Commission testified in substance that from his observation of the cut it would appear to a person reasonably familiar with work of the character of that proposed to be done, the bank or cut was dangerous, and that the danger would be "perceptible to a man working on that kind of construction"; that previous to the time when the slide in question occurred, and located within approximately eighteen feet thereof on a cut which ran at right angles to the cut here under consideration, another cave-in had taken place.

The objection of petitioners to the finding which is the subject of their criticism is directed to that part thereof which indicates that the accident which caused the death of the employee was "caused by the serious and wilful misconduct of the employers and/or their managing representative."

At the outset it should be remembered that as to questions of fact, where any substantial evidence is introduced in support thereof, the findings by the Commission are conclusive. (27 Cal. Jur., p. 582, and cases there cited.) With so much in mind, it becomes advisable to inquire whether a conclusion by the Commission as to ''serious and wilful misconduct'' constitutes a finding of fact. A definition of ''serious misconduct,'' as well as of ''wilful misconduct,'' may be found in the language used by the supreme court of this state in the case of *E. Clemens Horst Co.* v. *Industrial Acc. Com.,* 184 Cal. 180, 188, 189 [16 A. L. R. 611, 193 Pac. 105], as follows:

''The first question presented is, then, Was the commission justified in finding that the petitioner was guilty of 'serious misconduct'? There is no statutory definition of this term. In this connection we may again quote from Beven, page 401: 'To constitute ''serious misconduct,'' it is probable that the legislature intended to signify conduct that an average workman in being guilty of, either would know, or ought to know, if he turned his mind to consider the matter, to be conduct likely to jeopardize his own and his fellow-workman's safety.' In our opinion the serious misconduct of an employer under our statute may be similarly defined. There should be no difference in principle between the degree of care required of an employer and that exacted from an employee. 'Serious misconduct' of an employer must, therefore, be taken to mean conduct which the employer either knew, or ought to have known, if he had turned his mind to the matter, to be conduct likely to jeopardize the safety of his employees. . . . Next, as to whether such serious misconduct was 'wilful.' It has frequently been said that wilful misconduct involves the *knowledge* of the person that the thing which he is doing is wrong. (*Lewis* v. *Great Western Ry. Co.,* L. R. 3 Q. B. Div. (Eng.) 195; *In re Burns,* 218 Mass. 8 [Ann. Cas. 1916A, 787, 105 N. E. 601]; *Riley* v. *Standard Acc. Ins. Co.,* 227 Mass. 55 [116 N. E. 259]; *Beckles' Case,* 230 Mass. 272 [119 N. E. 653].) Conceding that knowledge is required, it seems to us that in order to prove the requisite knowledge, it is not necessary for the evidence to show positively that the person was notified of the unsafe condition of the premises, but

that it is sufficient if it appears that the circumstances surrounding the act of commission or omission are such as 'evince a reckless disregard for the safety of others and a willingness to inflict the injury complained of.' (*Louisville etc. Ry. Co.* v. *Bryan,* 107 Ind. 51 [7 N. E. 807]. See, also, *Pittsburg C. C. & St. L. Ry. Co.* v. *Judd,* 10 Ind. App. 213 [36 N. E. 779].)''

And the opinion therein also indicates that a conclusion on the issue of serious and wilful misconduct was a finding of fact within the province of the Industrial Accident Commission. But direct authority, where the question was necessarily involved, is contained in the case of *Myers* v. *Industrial Acc. Com.,* 191 Cal. 673, 677, 678 [218 Pac. 11]. It is there said: ''When injured, the applicant was a common laborer, twenty-three years of age. It was for the commission to determine the facts from all the surrounding and attendant circumstances as they existed at the time of the injury. Whether the action of the employer amounted to wilful misconduct as used in the act, and as defined in *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, 186 [149 Pac. 35], or whether it did not amount to that, was for the commission to determine. . . . ''

In the case of *Cunningham Construction Co.* v. *Morgan,* 86 Ind. App. 387 [156 N. E. 524], it was said that ''the question (of wilful misconduct) was one of fact for the Industrial Board.''

Considering that any conduct which the employers either knew or ought to have known was likely to jeopardize the safety of the employee constituted serious misconduct, and that wilful misconduct is manifested by a reckless disregard for the safety of the employee and a willingness to inflict the injury of which complaint is made (*Horst Co.* v. *Industrial Acc. Com., supra; Blue Diamond Plaster Co.* v. *Industrial Acc. Com.,* 188 Cal. 403 [205 Pac. 678]) ; and that (assuming the existence of substantial evidence in support thereof) the question of whether such conditions exist is one solely for the determination of the Industrial Accident Commission (*Myers* v. *Industrial Acc. Com.,* 191 Cal. 673 [218 Pac. 11])—from the facts adduced in evidence, as hereinbefore set forth, it becomes clear that the respondent Commission had before it at least substantial evidence relating to the issue and therefore was acting within its powers in

reaching the conclusion that "said injury was caused by reason of the serious and wilful misconduct of the employers and their managing representative." It follows that the objection of petitioners herein with reference to such finding cannot be sustained.

█ It is next urged by petitioners that the respondent Commission failed to make findings of fact which would show upon what its conclusion of serious and wilful misconduct on the part of the contractors was predicated. But assuming, as we must, that the finding of serious and wilful misconduct was that of an ultimate fact, it follows that it was unnecessary to set forth the several minor facts which taken together led to the determination of the ultimate fact.

In the case of *Frankfort G. I. Co.* v. *Pillsbury*, 173 Cal. 56, 60 [159 Pac. 150], it is said: "The Commission found the ultimate facts in controversy. It was not required to make specific findings upon probative matters. (*Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686, 705 [151 Pac. 398].)" And see, also, *Harlan* v. *Industrial Acc. Com.*, 194 Cal. 352, 356 [228 Pac. 654]; *Smith* v. *Industrial Acc. Com.*, 26 Cal. App. 560, 563 [147 Pac. 600].

Petitioners finally contend that that part of section 6 (a) (4) of the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831), as amended (Stats. 1919, p. 912; Stats. 1923, p. 375), which provides for extra compensation to the employee where his injury was caused by the serious and wilful misconduct of the employer, is unconstitutional. In that connection it need only be said that the precise point made by petitioners was ruled adversely to their contention in the case of *E. Clemens Horst Co.* v. *Industrial Acc. Com., supra.*

The award is affirmed.

Conrey, P. J., and York, J., concurred.

Petitioners' application to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 20, 1928.

All the Justices present concurred.